### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM L. COLLINS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-07-342-F |

### SECOND REPORT AND RECOMMENDATION

William L. Collins ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

**Administrative Proceedings**

Plaintiff's history of proceedings before the Social Security Administration is lengthy; for purposes of this appeal and recommendation, the following background is relevant:

(1) Following his first set of applications and as a result of a favorable decision by an Administrative Law Judge ("ALJ") [Tr. 421 - 427], Plaintiff began receiving disability insurance benefits and supplemental security income payments in 1994 [Tr. 24, 234 and 421 - 427]; September 11, 1992 – the day Plaintiff last engaged in substantial gainful employment – was established as the onset of disability date. *Id.* Subsequently, Plaintiff's benefits ceased as of January, 1997 [Tr. 24 and 234 - 235].

(2) Plaintiff protectively filed his second set of applications for disability insurance benefits and supplemental security income payments in July, 1998 [Tr. 23 and 235]. After initial denial of the claims, a hearing was set at Plaintiff's request before an ALJ; Plaintiff failed to appear. *Id.* The resulting dismissal order was vacated by the Appeals Council of the Social Security Administration, and the matter was remanded in September, 2000, to an ALJ with directions to afford Plaintiff another opportunity for an administrative hearing. *Id.*

(3) In the meantime, Plaintiff protectively filed a third set of applications in March, 2000. *Id.* By order of the Appeals Council, these applications were consolidated with the 1998 applications, and a administrative hearing was held in April, 2001. *Id.* The ALJ issued an unfavorable decision in July, 2001 [Tr. 23, 196 - 204, and 235 - 236]; on Plaintiff's request for review to the Appeals Council, the decision was vacated by order of September 12, 2003, and the matter remanded to an ALJ because the tape of the hearing could not be located [Tr. 23, 217 - 218, and 236].

(4)     While the foregoing request was pending before the Appeals Council, Plaintiff filed his final application seeking benefits in December, 2001, this time seeking only supplemental security income payments[1] [Tr. 24 and 236]. He was found disabled upon initial determination with December 1, 2001, established as his onset date. *Id.* and Tr. 565.

(5)     A hearing was held pursuant to the Appeals Council remand order in September, 2004 [Tr. 23 and 566 - 591]. A brief requested by the ALJ at the conclusion of the hearing [Tr. 590 - 591] was filed by Plaintiff's counsel [Tr. 234 - 245], and a supplemental hearing was then held on January, 2005 [Tr. 592 - 634].

(6)     By decision in April, 2005 – the decision which is the subject of this appeal – the ALJ set out the adjudicative periods under consideration:

> The Administrative Law Judge finds that the appropriate alleged onset date in this matter is January 1, 1997, as the claimant received disability insurance benefits and supplemental security income payments until the date. Further, the relevant adjudicative period for Title II [disability insurance benefits] purposes is January 1, 1997, through December 31, 1999, the date the claimant last met insured status requirements as stated in the Appeals Council Order.[2] The relevant adjudicative period for Title XVI [supplemental security income] purposes is January 1, 1997, through November 30, 2001.

---

[1] Plaintiff did not seek disability insurance benefits because he was no longer insured at the time of this final filing [Tr. 236].

[2] [Tr. 217 - 218].

[Tr. 24]. These time periods established by the ALJ have not been challenged in this appeal.

(7) The ALJ further determined that while Plaintiff was unable to perform his past relevant work as an ironworker, he retained the capacity to perform other generally available work and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 23 - 33]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 12 - 15], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that he has one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claims of Error**

It is Plaintiff's claim that the ALJ erred by "fail[ing] to take proper account of impairments limiting [Plaintiff's] ability to use his left hand and arm for work-related activities . . . [and] erred in concluding, without cause, that an examining physician who felt [that] Plaintiff cannot lift or carry objects weighing over five pounds did so based on [Plaintiff's] subjective claims rather than examination findings." [Doc. No. 37, pp. 5 - 6].

**Analysis**

In connection with the adjudicative periods under review, the ALJ's decision reflects that Plaintiff was born in February, 1956, and was 40 years old as of January 1, 1997, 43 years old on December 31, 1999, and 45 years old on November 30, 2001 [Tr. 31]. The ALJ noted Plaintiff's allegation that he became disabled on September 11, 1992, due to arthritic pain throughout his body, chest and stomach pain, a stroke, headaches, memory and hearing loss, shortness of breath, and poor vision [Tr. 25]. The ALJ further noted that Plaintiff testified, in part, that from 1997 to 2001, he had significant pain in his back for eighteen hours per day [Tr. 28 and 609 - 610], that he could sit for five minutes at a time before starting to squirm due to pain [Tr. 28 and 612], that he could stand for three to four minutes without moving [Tr. 28 and 625], and that he could not lift as a result of having had four hernias surgically repaired [Tr. 28 and 616].

The ALJ found Plaintiff's "statements concerning his impairments and their impact on his ability to work during the relevant adjudicative periods are not entirely credible . . . ." [Tr. 28]. In making his credibility determination, the ALJ relied, in part, on findings in a consultative psychological examination report from June, 2000 which he summarized as follows:

> It is noted that one consultative psychologist suggested that the claimant was engaging in possible malingering or misrepresentation. The psychologist indicated that the claimant's motivation was "highly suspect" during portions of the testing. It was further indicated that the functional information reported by the claimant was also "suspect." Based on his examination, the psychologist indicated that the claimant was not motivated to work and did not have a medical problem that would interfere with his ability to earn a living.

[Tr. 30 and 508A - 512 (record reference omitted]. Plaintiff has not challenged this credibility assessment on appeal.

The ALJ further determined that during the periods under review, Plaintiff was severely impaired by "asthma, a history of traumatic injuries with residual osteoarthritis of the knees and degenerative changes of the lumbar spine as well as arthralgias, history of substance abuse with continuing alcohol use, and being status post hernia repair." [Tr. 25]. He concluded that Plaintiff retained the residual functional capacity[3] to perform the exertional demands of sedentary work, retaining the ability to lift ten pounds occasionally, to stand/walk for two hours during an eight hour day, to sit for six hours during an eight hour day, and to stoop occasionally. [Tr. 30]. The ALJ also found that Plaintiff would suffer from a mild to moderate level of fatigue, discomfort, and anxiety. *Id.*

**Hand, Arm, Gripping, and Manipulation Limitations**

Plaintiff maintains that "the record shows that the ALJ took no note of the evidence showing [Plaintiff] to have impairments to his upper extremities, particularly the left hand and arm, that limited his ability to engage in gripping and manipulation." [Doc. No. 37, p. 14]. Specifically, Plaintiff argues that the record reveals that Plaintiff injured his left arm and hand in a 1977 motorcycle accident and that "several times during the relevant period [Plaintiff] complained of pain and/or numbness in the hands causing him to drop objects[.]"

---

[3]Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

*Id.* Nonetheless, Plaintiff points to no objective medical evidence to support Plaintiff's subjective complaints, complaints which the ALJ has generally determined lack credibility.

Rather, Plaintiff points to medical evidence generated *after* the expiration of the latest adjudicative period before the ALJ, November 30, 2001. *Id.* at 15. In this regard, Plaintiff argues that "[t]he truly incontrovertible evidence of disabling functional limitations to [Plaintiff's] left hand and arm came into being in early 2002, yet other evidence supports a finding that those limitations existed for a substantial earlier period of time." *Id.* at 16. Once again, however, not only does Plaintiff fail to direct the court to this "other evidence"[4] but he also fails to cite to *any* objective evidence of loss of grip strength or lack of manipulative abilities prior to the expiration of the adjudicative periods at issue here. Instead, Plaintiff maintains that the State agency's determination of disability as of December 1, 2001, required this ALJ to utilize Social Security Ruling 83-20 and a medical advisor to establish a possible earlier onset date. *Id.* at 15 - 17. This failure, according to Plaintiff, resulted in reversible error. *Id.* at 16 - 17. The Commissioner, on the other hand, maintains that SSR 83-20 does not apply here because the ALJ did not find Plaintiff to be disabled [Doc. No. 39, p. 4].

In the case of *Blea v. Barnhart*, 466 F.3d 906 (10th Cir. 2006), the court examined the question of when an ALJ is required to utilize Social Security Ruling 83-20, Program Policy Statement: Titles II and XVI: Onset of Disability (PPS-100), 1983 WL 31249 ("SSR-83-20"). The court explained that "SSR 83-20 is 'binding on all components of the Social Security

---

[4]That is, other *objective* evidence.

Administration,' including ALJs, 20 C.F.R. § 402.35(b)(1), and sets forth an analytical framework for assessing the date of onset for a disability of traumatic or non-traumatic origin." *Id.* at 909. In connection with an alleged disability that is considered non-traumatic in origin[5] the court outlined the Ruling:

> SSR 83-20 states that "[i]n disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." *Id.* [at 2]. The date alleged by the claimant is the starting point for determining disability onset, and the date the claimant stopped working is also of significance in selecting the onset date. *Id.* Medical evidence, however, is the "primary element" for the onset determination, as the onset date "can never be inconsistent with the medical evidence of record." *Id.* at 2 - 3.
>
> SSR 83-20 also provides that, when medical evidence does not establish the precise onset date, the ALJ may have to "infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." *Id.* at 2. The regulation provides two examples of situations where it may be necessary to infer an onset date: (1) in the case of a slowly progressing impairment, "when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available," and (2) when "onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination." *Id.* at 3. "At the hearing, the [ALJ] should call on the services of a medical advisor when onset must be inferred." *Id.*

*Id.* at 909 - 910 (footnote omitted).

Regardless of whether SSR 83-20 is applicable here, the need to infer an onset date with the services of a medical advisor is not automatically triggered under that Ruling by a

---

[5] For purposes of this appeal, the undersigned accepts Plaintiff's argument that his hand difficulties are non-traumatic in origin.

9

finding of disability[6] alone. Rather, under Tenth Circuit precedent, it is "where 'medical evidence of onset is ambiguous,' [that] an ALJ is obligated to call upon the services of a medical advisor." *Blea*, 466 F.3d at 911 (quoting *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995). As framed by the court in *Blea*, "the issue of whether the ALJ erred by failing to call a medical advisor turns on whether the evidence concerning the onset of [Plaintiff's] disabilities was ambiguous, or alternatively, whether the medical evidence clearly documented the progression of [Plaintiff's] conditions." *Id.* at 912. Here, contrary to the situation in *Blea* where the claimant had no medical records for an eighteen-month period – including his date last insured – Plaintiff has voluminous medical treatment and examination records surrounding his date last insured – December 31, 1999 – and continuing through November 30, 2001. *See Bigpond v. Astrue,* 280 Fed. Appx. 716, 718 (10th Cir. May 30, 2008)(unpublished op.)). Moreover, this medical evidence is not ambiguous.

The record before the court reveals that beginning with his first administrative hearing in 1994, Plaintiff testified that his left hand had not functioned since his 1977 motorcycle accident [Tr. 422] and that he was unable to lift or grasp anything with that hand [Tr. 423].[7] Then, as Plaintiff observes, he again complained of hand numbness in a Social Security filing

---

[6]Again, the State agency found Plaintiff disabled effective December 1, 2001[Tr. 565].

[7]Plaintiff was awarded benefits following this hearing; there is no indication in the ALJ's decision, however, that Plaintiff's allegations with regard to his hand limitations were objectively substantiated [Tr. 421 - 427]. In fact, Plaintiff was found capable of performing sedentary work, but his functional capacity was reduced by his moderately severe mental limitations [Tr. 426].

in August, 1998 [Doc. No. 37, p. 6; Tr. 71]. At a consultative examination in October, 1998 where Plaintiff voiced his complaints of hand arthritis and numbness, examination revealed a ten percent decrease in nerve sensation in Plaintiff's left hand and a fifty percent decrease in the right hand [Tr. 103 and 105]. Nonetheless, the sensation in the remainder of both hands and upper extremities was normal and, significantly, Plaintiff's grip strength was 5+/5 bilaterally and he was "able to appose the thumb to the fingertips without any problems, grasp tools and manipulate [small] objects without any difficulty." [Tr. 105 and 110 (Hand/Wrist Sheet)].    As Plaintiff again observes, he continued to complain in a Social Security filing about numbness throughout his left hand and joint pain in December, 1998 [Doc. No. 37, pp. 6 - 7; Tr. 79]. His complaints – hand numbness, hand arthritis, pain in hands and wrists – were repeated in March, 2000 [Doc. No. 37, p. 7; Tr. 471]. Once again, however, he was examined by a physician who found in July, 2000 that Plaintiff "has normal hand grip and fingr [sic] movements at this time, no evidence of any stiffness" and "has normal ability to button clothes and pick up a pencil." [Tr. 507]. Moreover, nothing in Plaintiff's *numerous* contacts with other medical sources throughout the adjudicative periods[8] reveals *any* objective indication of disabling hand impairments [Tr. 123 - 128, 129 - 138, 154 - 162, 163 - 169, 170 - 181, 277 -

---

[8]Plaintiff acknowledged that he had received medical "treatment through that whole timeframe from 1997 to 2001[.]" [Tr. 611].

11

279, 280 - 285, 286- 347,[9] 375 - 376, 377, 485 - 490, 491- 501,[10] 502 - 504,[11] 531, 531A - 538 and, 539 - 547].

Thus, contrary to Plaintiff's argument that "the ALJ failed to take proper account of impairments limiting [Plaintiff's] ability to use his left hand and arm for work-related activities[,]" [Doc. No. 37, p.5], there is no indication from the ample, unambiguous, and objective medical examination and treatment records that Plaintiff was suffering from *any* functional limitations – let alone *disabling* functional limitations – in connection with his hands or arms or with gripping or manipulation around the time of his date last insured or, in fact, at any point during the adjudicative periods. "The onset date 'can never be inconsistent with the medical evidence of record.'" *Blea,* 466 F3d. at 909 (citation omitted). This is not an ambiguous medical record, and no medical advisor was required. *See id.* at 913. The ALJ did not commit legal error by failing to apply SSR 83-20 in this case. *See also Bigpond,* 280 Fed. Appx. at 719.

### Weight Given to the Consultative, Examining Physician's Lifting Limitations

---

[9] The undersigned's review of the record shows that on November 7, 2000, Plaintiff complained about numbness in his back and hands [Tr. 336]; he attributed the numbness to back surgery. *Id.* No objective reaction to Plaintiff's complaint is reflected upon physical examination [Tr. 337].

[10] In June, 1999, Plaintiff complained of pain in his hands and wrists and of numbness in his fingers [Tr. 496 and 499]. No objective substantiation is noted.

[11] Plaintiff complained of shaking in his hands in March, 2000 [Tr.504]; no objective diagnosis was rendered [Tr. 503].

As his second claim of error, Plaintiff maintains that "the ALJ without adequate cause discounted the medical opinion from Dr. Mangapuram that [Plaintiff] cannot lift, carry or handle objects weighing over five pounds." [Doc. No. 37, p. 17]. The ALJ explained, in the following manner, his decision to give little weight to Dr. Mangapuram's lifting restrictions [Tr. 505 - 508]:

> On July 7, 2000, the claimant had a physical consultative examination. The examiner indicated in his notes that the claimant could not lift, carry, or handle objects which were five pounds or more. Based on the objective evidence noted in his report, it is obvious that the consultative physician relied quite heavily on the subjective symptoms and limitations provided by the claimant; therefore, his opinion regarding the claimant's functional limitations is given little weight. In support of this conclusion, the undersigned notes that there is no objective evidence in the doctor's report that would limit the claimant's ability to lift and carry objects weighing more than five pounds. While the consultative physician indicated that the claimant had muscle spasms and back pain with radiation on straight leg raising test, he also indicated that the claimant had no evidence of muscle atrophy. Range of motion was normal in all joints. Additionally, there was no evidence of any joint swelling, joint subluxation, or any reflex abnormalities. The claimant had equal power in all extremities. Furthermore, the doctor noted that an x-ray of the claimant's lumbar spine revealed only mild degenerative changes at L5.

[Tr. 29 (record reference omitted)].

It is Plaintiff's contention that the ALJ's assessment was "simply a substitution of the ALJ's own 'medical expertise' for that of the doctor, in that the reason given by the ALJ for disputing the doctor's opinion was in fact that the ALJ disagreed with the doctor regarding the functionally limiting significance of the objective examination findings shown in Dr. Mangapuram's report." [Doc. No. 40, p. 5]. Additionally, Plaintiff – whose testimony regarding any lifting difficulties referenced his hernias rather than his back [Tr. 616 and 621]

13

– maintains that "[t]his is not comparable to a situation in which contradictory medical opinions are weighed against one another and a judgment made about the relative supportability of each[.]" [Doc. No. 37, p. 18].

Contrary to Plaintiff's argument, Social Security regulations provide that if any of the evidence in a claimant's record, "including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all the evidence and see whether [the claimant is] disabled. . . . 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In deciding what weight to give a medical opinion, the regulations instruct that certain factors are to be utilized. *Id.* at §§ 404.1527(d), 416.927(d). Here, the ALJ found the consultative physician's opinion regarding Plaintiff's lifting abilities to be inconsistent with, and unsupported by, the objective findings in his own report – thus applying the "supportability" factor, *id.* at §§ 404.1527(d)(3), 416.927(d)(3)[12] – and declined to give the opinion more than little weight [Tr. 29]. His decision provides specific and legitimate evidentiary reasons for his conclusion.

Moreover, this conclusion by the ALJ was consistent with the findings of the State agency non-examining physician who reviewed the record evidence, including Dr. Mangapuram's report [Tr. 523 - 530].[13] In August, 2000, William M. Runkle, M.D.,

---

[12]Under the "supportability" factor, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). In this regard, the ALJ found "that there is no objective evidence in the doctor's report that would limit the claimant's ability to lift and carry objects more than five pounds." [Tr. 29].

[13]The ALJ specifically considered [Tr. 30], as required by the following regulations, the opinions of the non-examining State agency medical consultants:

completed a residual functional capacity assessment in which he directly addressed Dr. Mangapuram's opinion that Plaintiff cannot lift, handle, or carry objects which weigh five or more pounds [Tr. 529]. He concluded that the opinion was "grossly out of proportion to the physical findings," *id.,* findings which he identified earlier in his assessment [Tr. 525]. Thus, contrary to Plaintiff's argument that the ALJ substituted his own "medical" opinion for that of Dr. Mangapuram, the opinion of a medical consultant, Dr. Runkle, provides substantial evidence in support of the ALJ's decision to give Dr. Mangapuram's opinion little weight. The ALJ committed no error in this regard.

## **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be affirmed. The parties are advised of their right to object to this Report and Recommendation by December 15, 2008, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report

---

> Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. However, State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges *must* consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence . . . .

20 C.F.R. §§ 404.1527(f)(2)(I), 416.927(f)(2)(i)(emphasis added). And, while an ALJ will generally accord more weight to an examining source, there is no requirement that he do so. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). *See* Social Security Ruling 96-6p, at *3.

and Recommendation waives their right to appellate review of both factual and legal issues contained herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 24th day of November, 2008.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE